## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DENISE NEMETH-GREENLEAF, *et al.*,<br><br>      Plaintiffs,<br>  v.<br><br>UNITED STATES OFFICE OF<br>PERSONNEL MANAGEMENT, *et al.*,<br><br>      Defendants. | Case No. 1:25-cv-00407-CRC<br><br>Judge Christopher R. Cooper |

**DEFENDANTS' MOTION FOR RECONSIDERATION OF THE ORDER DENYING THEIR MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STRIKE THE CLASS ACTION ALLEGATIONS**

**INTRODUCTION**

Defendants previously moved to dismiss this suit because, among other reasons, Plaintiffs had not plausibly alleged the actual damages and causation necessary to state a Privacy Act claim. *See* Defs.' Mot. to Dismiss Pls.' Am. Compl., ECF No. 22. On March 4, 2026, the Court denied Defendants' motion, finding that "Plaintiffs have adequately alleged that they suffered actual damages by purchasing identity theft protection services to guard against potential fraud." Mem. Op. & Order 2, ECF No. 30 ("Op."). Despite rejecting two of Plaintiffs' damages theories, *id.* 13-14, the Court accepted "that a government employee who was aware of [specific] warning signs and responded by purchasing identity-protection services did so reasonably," *id.* 16. Justice requires reconsideration of this ruling, which contains a clear error about when Plaintiffs made their purchases and therefore what they knew at the time.

When Plaintiffs filed the original complaint on February 11, 2025, they already had purchased identity-protection services. Their decisions, therefore, necessarily were not in response to any "warning signs" that arose only after that date, such as the May 2025 National Labor Relations Board whistleblower report and the February 2026 filing in the District of Maryland. Because those subsequent events were the "most critical[]" to the Court's finding of reasonableness, *id.* 16, justice requires a reassessment limited to what Plaintiffs allegedly knew as of February 11, 2025. Indeed, under that timeframe, Plaintiffs have not plausibly alleged that their prophylactic purchases were reasonably incurred as a result of a Privacy Act violation. Accordingly, the Court should grant Defendants' Rule 12(b)(6) motion to dismiss.

At minimum, without any named plaintiff who incurred actual damages causally related to a disclosure or any reasonable fear of disclosure, the Court should strike the class action allegations from the amended complaint. Based on the inherent nature of this Privacy Act claim, individualized inquiries will be necessary to determine whether each proposed class member can establish actual damages and causation. No common evidence, for example, exists that can prove what each class member knew when they incurred an out-of-pocket expense. That means mini-

1

trials about the reasonableness of each member's expenditures and the connection to the alleged Privacy Act violation. And with a vastly defined proposed class of all past, present, and prospective federal employees, the number of mini-trials could easily reach into the millions. Because individual questions of fact inevitably will predominate, class certification is precluded. This case should proceed, if at all, solely on an individual basis.

## LEGAL STANDARD

### A.    Rule 54(b): Motion for Reconsideration

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." This leaves a district court "free to reconsider" interlocutory decisions, such as a denial of a motion to dismiss. *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009). A court should grant relief upon reconsideration "as justice requires." *Talbot v. U.S. Dep't of State*, 373 F. Supp. 3d 212, 217 (D.D.C. 2018) (citation omitted), *appeal dismissed*, 2019 WL 2149778 (D.C. Cir. May 15, 2019). "[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id.* (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)). "Revision" of a prior ruling "may be necessary when the Court has patently misunderstood a party" or "has made an error not of reasoning but of apprehension." *Id.* (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)). "Errors of apprehension may include a Court's failure to consider . . . data that might reasonably be expected to alter the conclusion reached by the court." *Singh*, 383 F. Supp. 2d at 101 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

### B.    Local Civil Rule 23.1(b): Motion to Strike Class Action Allegations

Under Local Civil Rule 23.1(b), a "defendant may move at any time to strike the class action allegations" in a complaint. This "remedy is generally available to 'require that pleadings be amended to eliminate class allegations,' in cases where 'a suit must proceed as a nonclass,

2

individual action.'" *Artis v. Yellen*, 309 F.R.D. 69, 73 (D.D.C. 2015) (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 183 n.6 (1974)) (Douglas, J., dissenting in part); *aff'd*, 2015 WL 10583057 (D.C. Cir. Dec. 21, 2015); *see also* Fed. R. Civ. P. 23(d)(1)(D) (authorizing court to "issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"). "[T]he decision of whether to strike all or part of a pleading rests within the sound discretion of the Court." *Artis*, 309 F.R.D. at 73 (quoting *Barnes v. Dist. of Columbia,* 289 F.R.D. 1, 6 (D.D.C. 2012)).

## ARGUMENT

### I.    The Court mistakenly assessed the contemporaneous reasonableness of Plaintiffs' purchases of identity-protection services

Justice requires reconsideration of the March 4 Order denying Defendants' Rule 12(b)(6) motion because the Court misapprehended what Plaintiffs were aware of when they voluntarily purchased identity-protection services. *See Talbot*, 373 F. Supp. 3d at 217. To survive the Rule 12(b)(6) motion, each Plaintiff must have "pleaded" all "elements" of their Privacy Act claim "with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. Dist. of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). That is, each Plaintiff had to plausibly "allege that (i) the agency 'intentional[ly] or willful[ly]' violated the Act's requirements for protecting the confidentiality of personal records and information; and (ii) [they] sustained 'actual damages' (iii) 'as a result of' that violation." *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 62 (D.C. Cir. 2019) (quoting 5 U.S.C. § 552a(g)(4)).

Under D.C. Circuit precedent, "out-of-pocket expenses" for "credit and identity protection service to prevent identity theft" may sometimes support a Privacy Act claim. *Id.* at 65; *see* Op. 13. But as this Court recognized, the plaintiff must show that [1] these expenses were "reasonably incurred"; [2] the agency's violation was "a 'substantial factor' in the sequence of events leading to" the purchase; and, [3] the purchase was "'reasonably foreseeable or anticipated as a natural consequence' of [the agency's] conduct." *In re OPM*, 928 F.3d at 65, 67 (quoting *Owens v.*

3

*Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017)); *see* Op. 13. Reasonableness is an "objective" standard. *Kentucky v. King*, 563 U.S. 452, 464 (2011). It depends "on the facts available to [the actor] at the time" of the action. *Skrynnikov v. Fed. Nat'l Mortg. Ass'n*, 226 F. Supp. 3d 26, 33 (D.D.C. 2017); *see, e.g.*, *Bell v. E. River Fam. Strengthening Collaborative, Inc.*, 480 F. Supp. 3d 143, 152 (D.D.C. 2020); *In re Grand Jury Investigation*, Grand Jury Action No. 19-15 (BAH), 2019 WL 2179116, at \*17 (D.D.C. Mar. 4, 2019). Here, what Plaintiffs were "aware of" and what they "responded [to] by purchasing identity-protection services" determines whether they "did so reasonably." Op. 16.

As for Plaintiffs' attempts to satisfy this standard, the Court first observed that "[w]hatever qualms Plaintiffs might have about DOGE staffers' lack of clearance or training, they have not alleged facts indicating that DOGE staffers are malevolent actors akin to the foreign adversaries in *In re OPM* or hackers or thieves in other Privacy Act cases." *Id*. 13-14. Thus, "Plaintiffs cannot justify the purchase of identity theft protection services on the ground that they were protecting themselves from the potential (or actual) consequences of a hack, as in *In re OPM*." *Id*. 14. Equally deficient were the allegations by a subset of Plaintiffs about "unauthorized debit charges" and the discovery of a "personal email address . . . on the 'dark web.'" *Id*. "[N]either of these allegations offer sufficient facts to infer a causal connection between these occurrences and the DOGE disclosures," so the Court "disregard[ed] them both as a potential independent form of damages and in assessing the reasonableness of the Plaintiffs' purchase of identity theft protection." *Id*.

Nonetheless, the Court found that "Plaintiffs have alleged sufficient facts to indicate that their decision to take prophylactic measures"—*i.e.*, purchase identity-protection services—"was reasonable." *Id*. 15. Specifically, it found "that a government employee who was aware of [specific] warning signs and responded by purchasing identity-protection services did so reasonably." *Id*. 16. "[P]*erhaps most critically*," the Court said, "Plaintiffs point to their awareness of [a] whistleblower disclosure to Congress" made in May 2025 by a National Labor Relations Board staffer. *Id*. (emphasis added). The Court further opined that a February 2026 filing in the

4

District of Maryland contained "proof" that Plaintiffs' "efforts to protect themselves" were "reasonable." *Id*. 17.

In accepting that Plaintiffs fell within the category of government employees who were aware of specific warning signs and purchased identity-protection services in response, the Court committed "a clear error of fact" on a dispositive issue, which suffices for reconsideration. *Ecological Rts. Found. v. U.S. EPA*, 541 F. Supp. 3d 34, 57 (D.D.C. 2021). It is clear from the record that Plaintiffs were *not* aware of the May 2025 and February 2026 disclosures when they chose to purchase identity-protection services. When the original complaint was filed on February 11, 2025, each plaintiff already had "purchased" services. ECF No. 1 (Compl.) ¶¶ 19-23; *see W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (on a motion to dismiss, "it is appropriate for the court to look beyond the amended complaint to the record, which includes the original complaint"). And the amended complaint copied over these allegations verbatim. *Compare* Compl. ¶¶ 19-23*, with* Am. First Am. Compl. ¶¶ 14-18, ECF No. 19 ("Am. Compl.").

The Court, for its part, had no occasion to fixate on the purchase dates because Plaintiffs had amended their complaint. The Opinion notes only that the purchases came "at some point following DOGE being given access to the computer systems and data in question [from the Berulis report]," Op. 5. This was because no party had identified that the operative "point," *in actuality*, preceded the filing of the Amended Complaint. So any "warning signs" that post-dated February 11, 2025 necessarily are irrelevant to the contemporaneous reasonableness of Plaintiffs' purchasing decisions. *Cf. Thomas v. Moreland*, Civ. A. No. 18-800 (TJK), 2020 WL 13695157, at *2 (D.D.C. Aug. 22, 2020) ("[O]nly things she knew at the time could be relevant to the reasonableness of that perception."). Yet these irrelevant, post-purchase events were the "most critical[]" for the Court's analysis. Op. 16. Given that, a fresh look focused on the actual timeframe "might reasonably be expected to alter the conclusion reached by the [C]ourt." *Singh*, 383 F. Supp. 2d at 101 (quoting *Shrader*, 70 F.3d at 257). Justice therefore requires reconsideration.

5

Disregarding post-purchase events, only two allegations remain that the Court deemed "relevant." Op. 16. First, Plaintiffs subjectively doubted the work experience and trustworthiness of DOGE staffers. *Id.* And second, Plaintiffs allegedly "were aware of contemporaneous public expert reports about how changes in agency security protocols generally could lead to increased risk of improper data exfiltration." *Id.* These allegations—individually or collectively—stop well "short of the line between possibility and plausibility of entitlement to relief" for a Privacy Act claim. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Indeed, the Court already said so: "Whatever qualms Plaintiffs might have about DOGE staffers' lack of clearance or training, they have not alleged facts indicating that DOGE staffers are malevolent actors akin to the foreign adversaries in *In re OPM* or hackers or thieves in other Privacy Act cases." Op. 13-14. So "Plaintiffs cannot justify the purchase of identity theft protection services on the ground that they were protecting themselves from the potential (or actual) consequences of a hack, as in *In re OPM*." *Id*. 14.

The amended complaint contains no additional allegations that might establish the plausibility of the Privacy Act claim. It simply—and vaguely—alleges that each plaintiff "learned about . . . breaches of [their] PSI from media reports" and, "[i]n response," they "purchased" identity protection services. Am. Compl. ¶¶ 14-18. Although Plaintiffs presumably know when they learned about the alleged "breach," from which media reports, what these reports said, and when they made these purchases, Plaintiffs declined to plead these basic facts. And the Court should not "accept" any "inferences drawn by [P]laintiffs" that "are unsupported by" well-pleaded facts in the complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (citation omitted). Thus, Plaintiffs have not plausibly stated a Privacy Act claim.

Defendants acknowledge that a litigant is not "entitle[d] . . . to a do-over" merely by filing a motion for reconsideration. *Citizens for Resp. & Ethics in Wash. v. U.S. DOGE Serv.*, Case No. 25-cv-511 (CRC), 2025 WL 863947, at *3 (D.D.C. Mar. 19, 2025). Defendants, however, did not "deliberately . . . forego" this argument in their motion to dismiss briefing. *Id.* Because the amended complaint muddied the waters about the purchase date, Defendants (like the Court)

6

regrettably overlooked the clues in the original complaint. And the significance of the original complaint's February 11, 2025 filing date emerged only when the March 4 Opinion rested its reasonableness holding on events from May 2025 and February 2026—a sequencing problem that no party briefed and that the Court therefore had no occasion to consider. Reconsideration exists for precisely this circumstance: "[e]rrors of apprehension may include a Court's failure to consider . . . data that might reasonably be expected to alter the conclusion reached by the court." *Singh*, 383 F. Supp. 2d at 101 (quoting *Shrader*, 70 F.3d at 257). And because the ruling is interlocutory, no party has relied upon it: Defendants answered on April 3, 2026, and class discovery has not yet begun.

Furthermore, significant "harm would accompany a denial of the motion to reconsider." *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 164 F. Supp. 3d 56, 63 (D.D.C. 2016) (citation omitted). The Court's denial of Defendants' Rule 12(b)(6) hinged entirely upon the state of affairs when Plaintiffs purchased identity-protection services, which we now know occurred months before the critical events that drove the Court's analysis. Justice therefore requires a reanalysis of this dispositive issue under the actual sequence of events. *See id.* at 68-69 ("harm or injustice would necessarily follow if the Court denied HHS's motion" to reconsider because it "clarified" the record for review). Otherwise, the parties—and the Court—will waste time and resources on discovery and further litigation when it is readily apparent that Plaintiffs have not stated a plausible claim for damages under the Privacy Act. The Court should grant Defendants' motion for reconsideration and dismiss this case.

## II.    Even if this case proceeds, it cannot proceed as a class action

If the Court declines to dismiss this case, at a minimum, it should strike the class action allegations because this particular Privacy Act suit—not premised on a traditional, acknowledged data breach that affects an identifiable collection of people—may only "proceed as a nonclass, individual action." *Artis*, 309 F.R.D. at 73 (quoting *Eisen,* 417 U.S. at 183 n.6 (Douglas, J., dissenting in part)); *see* LCivR 23.1(b); Fed. R. Civ. P. 23(d)(1)(D). "Courts have broad discretion

7

in determining whether to permit a case to proceed as a class action." *Salvador v. Allstate Prop. & Cas. Ins. Co.*, Civ. Case No. 19-2754 (RJL), 2020 WL 7042843, at *4 (D.D.C. Nov. 30, 2020). "In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 9–10 (D.D.C. 2015) (quoting *Eisen*, 417 U.S. at 178). Sometimes a plaintiff's inability to satisfy these requirements "is readily apparent from a reading of the . . . complaint." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997); *see, e.g.*, *Oliver v. Navy Fed. Credit Union*, 167 F.4th 106, 115 (4th Cir. 2026); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Abdul-Baaqiy*, 149 F. Supp. 3d at 11. This is such a case.

Plaintiffs seek to maintain a class action under Rule 23(b)(3) because, they allege, "the questions of law and fact common to [class members] predominate over any questions affecting only individual members." Am. Compl. ¶¶ 88, 94. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This "criterion is even more demanding than [the] Rule 23(a)" standard for commonality. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). It is "the court's duty to take a 'close look' at whether common questions predominate over individual ones." *Id.* (quoting *Amchem*, 521 U.S. at 615).

"Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Again, a Privacy Act claim requires that Plaintiffs "sustained 'actual damages'" and these damages were "'as a result of' th[e] violation." *In re OPM*, 928 F.3d at 62 (quoting 5 U.S.C. § 552a(g)(4)). Therefore, to satisfy Rule 23(b)(3), Plaintiffs must "show that they can prove, through common evidence, that all class members were in fact injured by the alleged" Privacy Act violations. *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013) (citing *Amchem,* 521 U.S. at 623–24). But in "Privacy Act damages actions, questions affecting only individual members greatly outweigh questions of

law and fact common to the class." *Lyon v. United States*, 94 F.R.D. 69, 76 (W.D. Okla. 1982); *see Schmidt v. U.S. Dep't of Veterans Affs.*, 218 F.R.D. 619, 637–38 (E.D. Wis. 2003) (rejecting proposed Privacy Act class action under Rule 23(b)(3)). This is particularly true when, unlike past Privacy Act data breach cases, Plaintiffs merely speculate whether a breach of their own data even occurred. *See, e.g.*, *In re OPM*, 928 F.3d at 49-50 ("breaches" by cyberattackers who "extracted almost 21.5 million background investigation records from [OPM's] Central Verification System"); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 20 (D.D.C. 2014) (data tapes stolen that contained "backup copies of medical data related to over 4 million TRICARE beneficiaries").

Take the named Plaintiffs. For each of them, the Court must analyze: [1] whether out-of-pocket expenses for identity-protection services were "reasonably incurred"; [2] whether the Privacy Act violation was "a 'substantial factor' in the sequence of events leading to" the purchase; and, [3] whether the purchase was "'reasonably foreseeable or anticipated as a natural consequence' of [the agency's] conduct." *In re OPM*, 928 F.3d at 65, 67; *see* Op. 13. Each absent class member, moreover, must individually prove actual damages, *Doe v. Chao*, 540 U.S. 614, 620–25 (2004). Those are highly fact-specific inquiries into what each plaintiff knew, when they knew it, and what action they took in response. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("An individual question is one where members of a proposed class will need to present evidence that varies from member to member . . . ." (citation omitted)). "When a case turns on individualized proof of injury," as this one clearly does, "separate trials are in order." *In re Rail Freight*, 725 F.3d at 253; *see Schmidt*, 218 F.R.D. at 637 ("questions of fact" about "whether any of the individual class members suffered an adverse effect as a result of the VA's failure to comply with" the Privacy Act "preclude certification under Rule 23(b)(3)"). This Court's treatment of the named Plaintiffs proves the point: it has already disregarded two Plaintiffs' fraud and dark-web allegations for want of facts supporting a "causal connection," Op. 14. Individualized causation failures have already surfaced before discovery has even begun.

9

After all, Plaintiffs' proposed class of essentially "[a]ll current, former, and prospective employees of the United States," Am. Compl. ¶ 89, inevitably "would yield a high number of 'false positives'"—*i.e.*, federal employees "who have spent no time on mitigation—and would thus require 'individualized proof of injury,'" *Attias v. CareFirst, Inc.*, 344 F.R.D. 38, 53 (D.D.C. 2023) (quoting *In re Rail Freight*, 725 F.3d at 253). There is no "classwide source of proof that could readily show which potential class members undertook mitigation measures at all, and specifically which potential class members acted in response to the" alleged Privacy Act violations, "as opposed to any number of other data breaches in recent years that have prompted" a particular federal employee to purchase identity-protection services. *Id.* at 53. And "[t]he need to identify which potential class members spent" money "specifically in response to the" alleged violation only raises more "individualized inquiries as to the causation element[]" of the Privacy Act claim. *Id.* at 53-54.

Given the massive breadth of the proposed class here, the number of "mini-trials" could reach the millions. *Schmidt*, 218 F.R.D. at 637. And for each proposed class member, Defendants must take "discovery" and engage in "cross-examination," *id.* at 637-38; that is the only way Defendants can test the veracity and validity of these self-reported damages. The sheer scale and predictability of this enterprise belies any hope that Plaintiffs could satisfy Rule 23(b)(3). *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 140 (D.D.C. 2017), (concluding "that the individualized inquiries that will be necessary to determine the members of the proposed class predominate over common questions of fact and law and therefore preclude a finding of predominance"), *aff'd* sub nom. *In re Rail Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869*, 934 F.3d 619 (D.C. Cir. 2019); *Schmidt*, 218 F.R.D. at 637-38 (declining "to certify the plaintiffs' proposed class under Rule 23(b)(3)" because it would have required proof that "each of the 168,000 members suffered an adverse effect" from alleged Privacy Act violation).

The defect begins with the class definition itself, which conditions membership on the merits. Plaintiffs propose a class of all employees "whose personal sensitive information ('PSI') was accessed without their prior written authorization." Am. Compl. ¶ 89. Whether any given

employee's information "was accessed without . . . authorization", *id.*, is the liability question, so identifying who is in the class requires resolving, person by person, the very inquiries described above. However that problem is labeled, *see In re White*, 64 F.4th 302, 313–15 (D.C. Cir. 2023) (concerns with such "fail-safe" definitions are to be addressed through Rule 23's enumerated requirements), it confirms that individualized issues predominate from the definition's first clause.

Nor is it possible for Plaintiffs to redefine a proposed class to eliminate these individualized inquiries. Plaintiffs could not, for instance, certify a class of past, current, or prospective federal employees who reasonably purchased credit monitoring based on what they knew about DOGE activities at the Treasury Department and OPM at the time of purchase. A "class definition must render potential class members identifiable according to objective criteria." *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 241 (D.D.C. 2019). But no past, present, or prospective federal employee—much less Defendants—could determine "simply by reading the definition, whether he or she was a member of the proposed class." *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003). What did each employee know? When did they know it? From which sources? How reliable are these sources? Are the sources reporting from personal knowledge? If not, how reliable are the sources' sources? The permutations of questions and answers are endless. They vividly demonstrate why there is no conceivable pathway for Plaintiffs to pursue a class action.

Based on the face of the amended complaint and the nature of the Privacy Act claim, Plaintiffs cannot "affirmatively demonstrate" satisfaction of Rule 23(b)(3)'s predominance requirement as a matter of law. *In re Rail Freight*, 934 F.3d at 622 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *see, e.g.*, *Oliver*, 167 F.4th at 109, 114-15 (affirming decision to deny class certification because inability to satisfy Rule 23(b)(3) predominance was apparent "on the face of the complaint"); *Jackson*, 130 F.3d at 1005-06 (same). Thus, the Court should strike the class action allegations from the amended complaint. *See Abdul-Baaqiy*, 149 F. Supp.

11

3d at 11 ("Because Plaintiff has failed to meet the typicality requirement, his class action claims will be stricken from the Amended Complaint.").[1]

**CONCLUSION**

For these reasons, the Court should grant Defendants' Motion for Reconsideration and dismiss this case for failure to state a claim. Alternatively, the Court should strike the class action allegations from the amended complaint.

Dated: July 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director

*/s/ Pierce J. Anon*
PIERCE J. ANON
(N.Y. Bar No. 6184303)
Trial Attorney
JAMES W. HARLOW
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 305-7573
Email: pierce.anon@usdoj.gov

*Counsel for Defendants*

---

[1] Should the Court deny this motion, Defendants reserve their right to raise additional objections to any motion for class certification that Plaintiffs file in the future.